**SO ORDERED.**

**SIGNED this 26 day of May, 2005.**



_Dale L. Somers_
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br>KEVIN D. MCFARLAND and<br>LINDA M. MCFARLAND,<br><br>              DEBTORS. | CASE NO. 03-12518<br>CHAPTER 7 |
| LINDA S. PARKS, Trustee,<br>            PLAINTIFF,<br>v.<br><br>NINNESCAH VETERINARY SERVICE<br>and RONALD T. KEELER, D.V.M.,<br>            DEFENDANTS. | ADV. NO. 04-5091 |

**MEMORANDUM AND ORDER GRANTING TRUSTEE'S
PREFERENTIAL TRANSFER COMPLAINT**

The matter before the Court is the Trustee's Complaint to recover an allegedly preferential transfer of $3,637.02 made by the Debtors to Defendants. The Plaintiff Trustee, Linda S. Parks,

appears by Cristy L. Anderson, Hite, Fanning & Honeyman L.L.P. Defendants, Ninnescah Veterinary Services and Ronald T. Keller, D.V.M. appear by Francis E. Meisenheimer and John B. Swearer, Martindell Swearer & Shaffer. There are no other appearances.

This is a core proceeding over which the Court has subject matter jurisdiction.[1] The parties have stipulated that this Court has jurisdiction over the parties, that venue is proper, and that the Court may try this adversary proceeding to final judgment by submission of briefs to the Court.

For the reasons stated below, the Court holds that the transfer was preferential and rejects the Defendants' ordinary course of business defense.

**FINDINGS OF FACT.**

The parties filed a joint stipulation of facts with supporting exhibits. The Court adopts that stipulation as its findings of fact, as follows:

1. Debtors, Kevin D. McFarland and Linda M. McFarland ("debtors"), filed a Chapter 7 Bankruptcy Petition on May 14, 2003.

2. Ron T. Keeler, D.V.M. owns and operates Ninnescah Veterinary Clinic in Hutchinson, Kansas (together "Ninnescah").

3. Debtors purchased supplies and services from the defendant in the months preceding the filing of the bankruptcy.

4. Debtors were in the farming business which required the use of veterinary services performed by Ninnescah.

---

[1] 28 U.S.C.A. §§ 157(a) and (b)(2)(F); 28 U.S.C.A. §§ 1334 (a) and (b).

2

5. Debtors received monthly billing statements from Ninnescah showing the amount incurred for current services, the amount due and the past due balance.

6. The Client Account Register shows a history of the debtors business activities with Ninnescah and is attached as Exhibit A. Exhibit A may be admitted to evidence without objection.

7. The preference period began on February 13, 2003 and ended on the date of filing, May 14, 2004 [sic].

8. At the beginning of the billing period of February 2, 2003 through February 28, 2003 debtors had an account balance with Ninnescah of $3,112.41. They incurred additional charges of $639.93 and made a payment in the amount of $968.01 as evidenced by the summary attached as Exhibit B. A copy of the cancelled check in the amount of $968.01 is attached as Exhibit C. Exhibit B and C may be admitted to evidence without objection.

9. On the billing closing date of February 28, 2003 debtors had an unpaid overdue balance of $2,144.40 (see Exhibit B).

10. Debtors made a payment of $3,637.02 on March 24, 2003 within the 90 day preference period. A copy of the cancelled check in the amount of $3,637.02 is attached as Exhibit D. Exhibit D may be admitted to evidence without objection.

11. At the time of the payment on March 24, 2003 the debtors were indebted to Ninnescah in the amount of $2,144.40.

12. At the time of the payment on March 24, 2003 the debtors were insolvent.

13. Payment on March 24, 2003 resulted in a credit balance of $852.69 which was reflected on the March 31, 2003 entry (see Exhibit B).

3

14. Debtors made sporadic payments to Ninnescah and did not regularly pay more than what they owed to Ninnescah, leaving a large credit balance, for any given month.

15. Unless the parties indicate otherwise, the law governing the case is that of the State of Kansas and the United States Bankruptcy Code.

**POSITIONS OF THE PARTIES.**

The Trustee's complaint alleges that the payment by the Debtors to Defendants on March 17, 2003, in the amount of $3,637.02, was preferential pursuant to 11 U.S.C. § 547 [2] because the transfer was made within 90 days of the filing of the bankruptcy, for the payment of an antecedent debt, and enabled Defendants to receive more than they would have if the payment had not been made and payment of the debt were to the extent provided by the provisions of the Code. Further, the Trustee in her Complaint alleges a right to interest at the judgment rate and reimbursement for her fees and expenses in connection with the action.

The Defendants do not dispute the Trustee's allegations of a preferential transfer. Rather, the Defendants contend that the transfer is not subject to avoidance under the ordinary course exception found in section 547(c)(2), which provides:

> (c) The trustee may not avoid under this section a transfer --
> \*\*\*
> (2) to the extent that such transfer was --
> (A) in payment of a debt incurred by the debtor in the ordinary course
> of business or financial affairs of the debtor and the transferee;
> (B) made in the ordinary course of business or financial affairs of the
> debtor and the transferee; and
> (C) made according to ordinary business terms.

---

[2] Future references to the Bankruptcy Code in the text shall be to the section only.

4

The Trustee contends that the Defendants have not satisfied the elements of this exception.

**ANALYSIS AND CONCLUSIONS OF LAW.**

"The purpose of the ordinary course exception is 'to leave undisturbed normal financing relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.'" [3] It was intended to "protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of the Debtor and the transferee."[4] "To give the struggling debtor a chance to rehabilitate its financial problems, the trustee has avoidance powers to deter 'creditors from racing to the courthouse to dismember a failing debtor,' and the exceptions to avoidance or likewise designed to encourage creditors to continue their dealings with the debtor during this difficult time."[5] The ordinary course exception is narrowly construed.[6] The burden of proof is upon the creditor to proof each element of the defense.[7]

There are three elements to the ordinary business exception. The first set forth in subsection (c)(2)(A), is "that the transfer was made in payment of a debt incurred by the debtor in the ordinary

---

[3] *Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir. 1993)., quoting S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978).

[4] *Morris v. Kansas Drywall Supply Company, Inc. (In re Classic Drywall, Inc.)*, 121 B.R. 69, 75 (D.Kan. 1990), *quoting In re Fulghum Const. Corp.*, 872 F.2d 739, 743 (6th Cir.1989).

[5] *Id.*, quoting *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir.1984).

[6] *Payne v. Clarendon National Insurance Company, U.S. (In re Sunset Sales, Inc.)*, 220 B.R. 1005, 1020 ( 10th Cir. BAP 1998), *quoting Jobin v. McKay (In re M & L Bus. Mach. Co.)*, 84 F.3d 1330, 1339 (10th Cir.1996).

[7] 11 U.S.C.A. § 547(g); *In re Classic Drywall, Inc.*, 121 B.R. at 74.

5

course of business or financial affairs of the debtor and the transferee."[8] The parties agree that this element is satisfied. The bill for veterinary services which was paid on March 17, 2003 was incurred in the ordinary course of the dealings between the Debtors and the Defendants.

The second element of the ordinary course exception, set forth in subsection (c)(2)(B), is "that the transfer was made in the ordinary course of business or financial affairs of the debtor and the transferee."[9] This has been interpreted as a subjective test of whether the transfer was ordinary as between the parties.[10] Courts have identified four primary factors to determine whether this subjective test is satisfied. They are:

> (1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made.[11]

These factors are determined by comparing pre-preference period payments with those made during the preference period.[12]

The Court finds that the second element is not satisfied in this case. The March 2003 payment was not consistent with the practices between the parties from January 2002 through January 2003. This is evidenced by the following summary exhibit B included in the parties' stipulations which

---

[8] *In re Classic Drywall, Inc.*, 121 B.R. at 74.

[9] *Id.*

[10] *In re Sunset Sales, Inc.*, 220 B.R. at 1020.

[11] *Id.* at 1020-1021.

[12] *Id.*

6

| DATE | BALANCE (includes billed amount from previous month) | CURRENT CHARGES (including finance charges not billed until following month) | PAYMENTS RECEIVED | UNPAID OVERDUE BALANCE |
|---|---|---|---|---|
| 12/31/01 | $626.30 | | | |
| 1/1/02-1/31/02 | $626.30 | $555.76 | $0.00 | $626.30 |
| 2/1/02-2/28/02 | $1,182.06 | $462.15 | $1,182.06 | $0.00 |
| 3/1/02-3/31/02 | $462.15 | $1,107.85 | $0.00 | $462.15 |
| 4/1/02-4/30/02 | $1,570.00 | $529.60 | $1,570.00 | $0.00 |
| 5/1/02-5/31/02 | $529.60 | $777.65 | $529.60 | $0.00 |
| 6/1/02-6/30/02 | $777.65 | $724.33 | $0.00 | $777.65 |
| 7/1/02-7/31/02 | $1,501.98 | $909.00 | $1,501.98 | $0.00 |
| 8/1/02-8/31/02 | $909.00 | $2,484.53 | $909.00 | $0.00 |
| 9/1/02-9/30/02 | $2,484.53 | $3,612.05 | $0.00 | $2,484.53 |
| 10/1/02-10/31/02 | $6,096.58 | $1,742.26 | $0.00 | $6,096.58 |
| 11/1/02-11/30/02 | $7,838.84 | $2,926.39 | $8,438.34 | ($600.00) (credit balance) |
| 12/01/02-12/31/02 | $2,326.39 | $1,669.17 | $0.00 | $2,326.39 |
| 1/1/03-1/31/03 | $4,195.56 | $2,416.85 | $3,500.00 | $695.56 |
| 2/1/03-2/28/03 | $3,112.41 | $639.93 | $868.01 | $2,144.40 |
| 3/1/03-3/30/03 | $2,784.33 | $852.69 | $3,637.02 | ($852.69) (credit balance) |
| 4/1/03 | $652.69 | | $0.00 | ($200.00) (credit balance) |

compares the balance, current charges, payments received, and unpaid over to balance for the period December 31, 2001 through April 1, 2003.

Exhibit B

During 2002 the Debtors incurred charges every month, brought their unpaid overdue balance to zero by the end of February, April, May, July, and August, but did not pay for current charges during the month they were incurred. During November, two payments were made (exhibit A). The first, consistent with past practice, paid the past due balance of $7,838.84 in full. The second of $600.00 made at the end of the month paid a portion of the current charges of $1,757.39. The unpaid overdue balance was not brought to zero by the end of December, January, or February, 2003. The March payment not only paid the entire overdue balance of $2,114.40, the amount the Debtors would have paid in accord with the practice followed from January through November, but also paid all the March invoices in the amount of $652.69, *plus* $200, leaving a $200 credit balance on April 1, 2003. There is no similar payment in the history shown.[13] Early payments not consistent with past practices between the parties have been held outside the ordinary course exception.[14] Significantly, after the payment was made in March, the Debtors did not incur any charges for veterinary services with Defendants until June 26, 2003, more than two months after the March payment and more that one month after filing for relief on May 14, 2003. It appears to the Court that the Debtors paid the Defendants in full in March in hopes of continuing a post-petition business relationship. Further, the timing of the March payment is questionable. The copy of the March check included in the exhibits but bears a date of March 24, 2003

---

[13] Defendants have offered to turn over the $200 excess payment to the Trustee. The Court does not find that such an offer operates to bring the remainder of the March payment within the ordinary course exception. The fact that a least a portion of the payment was in excess of the amount owed at the time of the payment evidences that the entire payment, not only the $200 excess, was not in the ordinary course.

[14] *R.M. Taylor, Inc. v. Employers Insurance of Wausau (In re R.M. Taylor, Inc.)*, 245 B.R. 629, 637 (Bankr.W.D. Mo. 2000).

and appears to have cleared on March 26, 2003. Yet the Defendants credited the account with the amount of the check on March 17, 2003. All these factors evidence that the March payment was not in the ordinary course of business between the Debtors and the Defendants.

The third factor set forth in subsection (c)(2)(C) requires that the transfer be made according to ordinary business terms. This is an objective test, requiring the court to compare and contrast a particular transaction against the practices and standards of the industry.[15] In the Tenth Circuit, "[o]rdinary business terms ... are those used in 'normal financing relations': the kinds of terms creditors and debtor use in ordinary circumstances, when debtors are healthy."[16] Although the Court is fully aware that it is common practice for farmers and ranchers to make irregular payments to veterinarians, the Defendants have offered no evidence that the March payment was one which would have been common place in the industry if the Debtors had been healthy rather than needing to file bankruptcy in less than two months. The Defendants have not sustained their burden on proof on this element.[17]

For the foregoing reasons, the Court concludes that the Defendants have not satisfied two of the three elements required for the ordinary course of business exception to preferential transfer set forth in section 547 (c)(2). The Court therefore finds in favor of the Trustee on her claim and that the transfer of $3,637.02 made by the Debtors to the Defendants by check in March, 2003 was preferential.

---

[15] *In re Classic Drywall, Inc.,* 121 B.R. at 75; *Gonzales v. DPI Food Products Company (In re Furrs Supermarkets, Inc.)*, 296 B.R. 23, 41 (Bankr. D.M. 2003).

[16] *In re Meridith Hoffman Partners*, 12 F.3d at 1553.

[17] *In re Sunset Sales,* 220 B.R. at 1021-22.

9

The Trustee prays for interest at the judgment rate. "In bankruptcy proceedings, the courts have traditionally awarded prejudgment interest to a trustee who successfully avoids a preferential or fraudulent transfer from the time demand is made or an adversary proceeding is instituted unless the amount of the contested payment was undetermined prior to the bankruptcy court's judgment."[18] Accordingly, this Court awards prejudgment interest on $3,637.02 from April 14, 2004, the date of filing of the Trustee's complaint, at the judgment rate as defined by 28 U.S.C.A. 1961(a). Although the Trustee also requests an award of attorney's fees, she provides no argument and no authority for her position. The Court denies the request.

**CONCLUSION.**

Accordingly, for the reasons stated above, the court grants the Trustees Complaint, rules that the Debtors' payment of $3,637.02 to Defendants in March 2003 was preferential within the meaning of section 547(b), that the transfer is not excepted from avoidance by the ordinary course exception of section 547 (c)(2), and that the Trustee is entitled to recover the transfer from the Defendants pursuant to section 550, together with prejudgment interest from April 14, 2004, at the judgment rate established by 28 U.S.C.A. § 1961 (a).

###

---

[18] *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993).